**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

JOHN HARRIS,

      Plaintiff,

v.                                   Case No. 12-12331

DETROIT PUBLIC SCHOOLS, et al.,

      Defendants.

_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

The underlying cause of action in this case arises from Plaintiff John Harris's employment with Southwestern High School as a substitute teacher. From August 2010 through May 2011, Plaintiff received multiple disciplinary memoranda for various work violations. The infractions culminated in a disciplinary hearing, resulting in Plaintiff receiving a three-day unpaid suspension. Plaintiff filed an unfair labor practices charge with the Michigan Employment Relations Commission ("MERC") against the School District of the City of Detroit and the Detroit Federation of Teachers. After the Administrative Law Judge dismissed the case for failing to state a claim and the MERC affirmed, Plaintiff filed suit in this court alleging several state and federal claims against eleven defendants. Three separate motions to dismiss were filed by Defendants' various counsel, arguing Plaintiff failed to properly state a claim. The motions have been fully briefed, and the court decides a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the following reasons, the court will grant the motions.

## I. BACKGROUND

Plaintiff began working with Detroit Public Schools in 1997 as a substitute teacher.  (Compl. ¶ 8, Dkt. # 1.)  He was assigned to work as a special education teacher at Southwestern High School in August 2010.  (Compl. Ex. 1 at 1, Dkt. # 1-1.)  Not long after on November 11, 2010, Plaintiff received a disciplinary memorandum from Defendant-Principal Stefana Romanov for ignoring administrative directives and failing to wear proper work attire.  (Compl. Ex. 2 at 1, Dkt. # 1-1.)  Plaintiff received a second disciplinary memorandum on February 14, 2011, for excessive absenteeism and not completing his assigned duties.  (*Id.* at 2, Dkt. # 1-1.)  Romanov and Plaintiff met on February 18, 2011, to discuss these violations during which Plaintiff had the opportunity to object to the memoranda.  (Compl. at 5, Dkt. # 1.)  Instead of objecting at the meeting, Plaintiff sent Romanov a written complaint on February 28, 2011, that he labels a "Step 1 grievance."  (Compl. Ex. 2 at 3–8, Dkt. # 1-1.)  Romanov was supposed to respond to Plaintiff's grievance within ten days, but did not reply until April 14, 2011.  (*Id.* at 11, Dkt. # 1-1.)

After receiving two more disciplinary memoranda in May 2011, (Compl. Ex. 4 at 1–2, Dkt. # 1-1), Plaintiff refuted the violations on May 12, 2011, by sending "additional information" to his "Step 1 grievance" to Defendant Godwin Iduma, Assistant-Principal of Southwestern High School, (*id.* at 3–5, Dkt. # 1-1), and Defendant Karen Whittler, Labor Relations Administrator for the Detroit Federation of Teachers ("DFT"), (Compl. Ex. 2 at 9–10, Dkt. # 1-1).  Plaintiff received a fifth disciplinary memorandum on May 27, 2011, for leaving work premises during work hours without administrative approval.  (Compl. Ex. 7 at 2, Dkt. # 1-1.)

2

Defendant Lauri Washington, Executive Director of Employee Relations for the Detroit Public Schools, sent Plaintiff notice that a disciplinary hearing would be held on June 3, 2011, to discuss his assorted work violations.  (Compl. Ex. 7 at 1, Dkt. # 1-1.) The hearing occurred as scheduled with numerous parties in attendance including Plaintiff, Romanov, Iduma, Plaintiff's co-workers, and Whittler as Plaintiff's Union representative.  (Compl. Ex. 8 at 2, Dkt. # 1-1.)  After the hearing concluded, Washington informed Plaintiff that he was found guilty of the work violations and would be suspended without pay for three days.  (*Id.* at 1, Dkt. # 1-1.)

Plaintiff contested his suspension on September 23, 2011, by filing an unfair labor practices charge under the Public Employment Relations Act, Mich. Comp. Laws § 423.201, *et seq.*, with the Michigan Employment Relations Commission ("MERC"), (Compl. Ex. 12 at 2–6, Dkt. # 1-2.)  The charge was brought against the School District of the City of Detroit and the DFT.  (*Id.* at 2, 4, Dkt. # 1-2.)  On November 30, 2011, an Administrative Law Judge issued a Recommended Order to dismiss the case for failing to state a claim, (*id.* at 12–15, Dkt. # 1-2.), which the MERC affirmed on May 15, 2012, (*id.* at 17, Dkt. # 1-3).

Following the dismissal, Plaintiff filed suit in this court alleging: (1) sex discrimination, race discrimination, and harassment under Title VII of the Civil Rights Act of 1964; (2) violation of Fourteenth Amendment procedural due process brought under § 1983; (3) breach of the duty of fair representation; (4) defamation; and (5) civil conspiracy.  The claims are brought against eleven defendants: (1) Detroit Public Schools; (2) Rick Snyder, Governor of Michigan; (3) Ruthanne Okun, Director of Employment Relations/MERC; (4) Roy Roberts, emergency manager for Detroit Public

3

Schools; (5) Lauri Washington, Executive Director Employee Relations for Detroit Public
Schools; (6) Stefana Romanov, Principal of Southwestern High School; (7) Godwin
Iduma, Assistant Principal at Southwestern High School; (8) Rebecca Lune, Assistant
Superintendent for Detroit Public Schools; (9) Rodolfo Diaz, Principal at Detroit Western
International High School; (10) Keith Johnson, President of Detroit Federation of
Teachers; and (11) Karin Whittler, Labor Relations Administrator for the Detroit
Federation of Teachers.  Defendants filed three separate motions to dismiss, by their
respective counsel, arguing that Plaintiff's Complaint fails to state a claim.  Plaintiff's
various claims are directed at multiple parties, some of which are represented by
different counsel.  Therefore, the court issues this opinion and order to expeditiously
resolve all three motions.

## II.  STANDARD

A complaint may be dismissed under Rule 12(b)(6) when the plaintiff fails to state
a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss
under Rule 12(b)(6) is "interpreted in conjunction with Federal Rule of Civil Procedure 8,
requiring a short and plain statement of the claim."  *Chesbrough v. VPA, P.C.*, 655 F.3d
461, 467 (6th Cir. 2011).  The purpose of Rule 8 is to "'give the defendant fair notice of
what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v.
Twombly*, 550 U.S. 544, 555 (2007) (citing *Conely v. Gibson*, 355 U.S. 41, 47 (1957)).
A complaint "does not need detailed factual allegations," *Twombly*, 550 U.S. at 555, but
"requires more than labels and conclusions, and a formulaic recitation of the elements
of a cause of action will not do."  *Id.*  The "factual allegations must be enough to raise a

4

right to relief above the speculative level." *Id.* The plaintiff must plead "only enough

facts to state a claim to relief that is plausible on its face." *Id.* at 570.

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must

construe the complaint in a light most favorable to the plaintiff and accept all of the

factual allegations as true. *Evans-Marshall v. Bd. of Educ.,* 428 F.3d 223, 228 (6th Cir.

2005). In doing so, the court must "draw all reasonable inferences in favor of the

plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). Yet the court

"need not accept as true legal conclusions or unwarranted factual inferences." *Gregory*

*v. Shelby Cnty.*, *Tenn.*, 220 F.3d 433, 466 (6th Cir. 2000). A court cannot grant a

motion to dismiss under Rule 12(b)(6) based upon its disbelief of a complaint's factual

allegations. *Wright v. MetroHealth Med. Ctr.*, 58 F.3d 1130, 1138 (6th Cir. 1995).

"[T]he court primarily considers the allegations in the complaint, although matters of

public record, orders, items appearing in the record of the case, and exhibits attached to

the complaint also may be taken into account." *Amini v. Oberlin College*, 259 F.3d 493,

502 (6th Cir. 2001).

## III.  DISCUSSION

Defendants argue that Plaintiff's Complaint does not state a viable cause of

action against any of the eleven Defendants. The court addresses each of Plaintiff's

five claims in turn and finds that Plaintiff has failed to properly state a claim against any

Defendant.

### A.  Title VII Claims

Plaintiff's Title VII claims fail because he has not satisfied the procedural

prerequisites. A complaint must be timely filed with the Equal Employment Opportunity

Commission ("EEOC") before a Title VII action can be brought in federal court. *Rasimas v. Mich. Dep't of Mental Health*, 714 F.2d 614, 620 (6th Cir. 1983). In deferral states with fair employment agencies, such as Michigan, "all complaints must be filed with the EEOC within 300 days after the act of discrimination" before relief can be granted in federal court. *Id.* at 621. (citing 42 U.S.C. § 2000e-5(e)).

Plaintiff has not filed a complaint with the EEOC, and the statute of limitations to file such a complaint has expired. The discriminatory acts alleged by Plaintiff occurred, at the latest, by June 3, 2011, when his disciplinary hearing was held at Southwestern High School. More than 360 days passed before Plaintiff filed suit in this court on May 29, 2012. As Plaintiff has not satisfied the procedural prerequisites for filing a Title VII action, his Title VII claims alleging sex discrimination, race discrimination, and harassment are barred and must be dismissed.

### B. Fourteenth Amendment – Procedural Due Process

Plaintiff seeks relief under § 1983 for the violation of his Fourteenth Amendment right to procedural due process. To establish a § 1983 claim, Plaintiff must plead facts that show "the deprivation of a right secured by the Constitution or laws of the United States caused by a person acting under the color of state law." *Heyne v. Metro. Nashville Pub. Schs.*, 655 F.3d 556, 562 (6th Cir. 2011). The Due Process Clause of the Fourteenth Amendment requires adequate due process procedures before depriving a person of their right to life, liberty, or property. *Mitchell v. Fankhauser*, 375 F.3d 477, 479–80 (6th Cir. 2004) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985)). The court engages in a two-step analysis in determining whether there has been a procedural due process violation. *Mitchell*, 375 F.3d at 480. First, the court

6

asks if the plaintiff has a property interest entitled to due process protection. *Id.* In this case, Plaintiff had a protected property interest in not receiving unpaid suspension from his employment. *See id.* ("In the present case, [the defendants] do not contest that [the plaintiff] had a protected property interest in his employment.").

If the plaintiff has a protected property interest, the court must then decide what process is due. *Id.* When employment rights are at issue, the Due Process Clause requires "'that an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest.'" *Id.* (quoting *Loudermill*, 470 U.S. at 542). A pre-termination hearing "'need not be elaborate.'" *Mitchell*, 375 F.3d at 480 (quoting *Loudermill*, 470 U.S. at 545). "'The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Mitchell*, 375 F.3d at 480 (quoting *Loudermill*, 470 U.S. at 546).

While Plaintiff never clearly states exactly which Defendants infringed his due process, Plaintiff's Complaint appears to assert the claim against Snyder, Okun, Roberts, Johnson, Whittler, and Detroit Public Schools. Yet Plaintiff fails to describe how he was denied due process. Plaintiff declares that he "was denied due process," but instead of explaining how his disciplinary hearing was improperly conducted, he instead follows the conclusory statement with a ten-page brief he previously filed with the MERC for his unfair labor practices charge.

Nonetheless, after reviewing Plaintiff's forty-nine page Complaint in its entirety, he seems to assert he was denied due process because he believes the disciplinary hearing should never have occurred. On February 28, 2011, Plaintiff filed a "Step 1

7

grievance" with Romanov denying the work violations of which he was accused and arguing that he was being harassed.  While Romanov was supposed to respond to Plaintiff's grievance within ten days, she did not do so until April 14, 2011.  Plaintiff thereby concludes that "there was not a true step (1) process," which consequently made his disciplinary hearing unlawful.  However, Plaintiff does not explain why Romanov's untimely response to his grievance would prevent the school district from initiating a disciplinary hearing for his numerous work violations.  Nor does Plaintiff argue that he was not informed of the charges against him, presented with evidence supporting those charges, or allowed to explain his behavior.  In fact, as Plaintiff concedes, he even had Union representation at the hearing.  Plaintiff's procedural due process claim lacks sufficient factual allegations and is dismissed under Rule 12(b)(6).

## C.  Breach of the Duty of Fair Representation

While Plaintiff never so explicitly states, he appears to allege that Johnson, the President of the DFT, and Whittler, the Labor Relations Administrator for the DFT, breached their duty of fair representation.  A labor union has a duty to fairly represent its members.  *Goolsby v. City of Detroit*, 358 N.W.2d 856, 862 (Mich. 1984).  The duty "is comprised of three distinct responsibilities: (1) to serve the interests of all members without hostility or discrimination toward any, (2) to exercise its discretion with complete good faith and honesty, and (3) to avoid arbitrary conduct."  *Id.* at 863.  A union breaches its duty of fair representation when it does not satisfy any one of those three responsibilities.  *Id.*

Plaintiff claims that he was "not allowed to have full representation by the Union" because Whittler "assisted and allowed" Washington to conduct "an unlawful disciplinary

8

hearing." (Compl. at 41, Dkt. # 1.) According to Plaintiff, the hearing occurred only because Washington and Whittler are supposedly both members of the Alpha Kappa Alpha Sorority. (*Id.*, Dkt. # 1.) Yet Plaintiff does not explain how Whittler's sorority membership or acquiescence to the "unlawful disciplinary hearing" constitutes discriminatory, hostile, bad faith, or arbitrary conduct. Neither does Plaintiff attribute any words or conduct on Johnson's behalf to illustrate how he violated any of the three responsibilities that comprise the duty of fair representation. While *pro se* litigants are granted leniency and held "'to less stringent standards than formal pleadings drafted by lawyers,'" (*Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)), Plaintiff's Complaint is devoid of any factual allegations to place Johnson and Whittler on notice as to how they breached their duty of fair representation, and the claim must be dismissed.

### D. Defamation

Plaintiff's defamation claim suffers the same fate. A plaintiff alleging defamation must show:

> (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting at least to negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm (defamation per se) or the existence of special harm caused by publication.

*Mitan v. Campbell*, 706 N.W.2d 420, 421 (Mich. 2005). Plaintiff's Complaint falls grossly short of pleading facts to meet any of these elements. At the very end of his lengthy Complaint, Plaintiff avers, "The Defendants have made a number of defamatory statements about the Plaintiff." (Compl. at 48, Dkt. # 1). Plaintiff does not reproduce the defamatory statements or even hint to which of the eleven Defendants made such

9

statements.  A complaint will not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff's defamation claim thereby fails under Rule 12(b)(6).

### E.  Conspiracy

Plaintiff argues that Defendants conspired to subject him to a hostile work environment.  It is unclear whether Plaintiff filed a civil conspiracy claim under 42 U.S.C. § 1985(3) or Michigan law.  In explaining which law Plaintiff believes should govern his conspiracy claim, he cites to *Craig v. United States*, 81 F.2d 816 (9th Cir. 1936), a case that discusses federal criminal conspiracy.  Nevertheless, Plaintiff's civil conspiracy claim fails under federal and Michigan law.

In order to state a claim under § 1985(3), Plaintiff must prove:

(1) a conspiracy between two or more persons; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Umani v. Mich. Dep't of Corrections*, 432 F. App'x 453, 462 (6th Cir. 2011).  Plaintiff must furthermore show "that the conspiracy was motivated by a class based animus, such as race." *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  Yet Plaintiff does not allege any facts or provide any evidence that demonstrates he was denied equal protection due to his race or class.  He simply recounts the facts that gave rise to his disciplinary hearing, claiming that he was harassed throughout the process, and that the hearing "was confabulated to circumvent the grievance step processes that never

10

took place." (Compl. at 19, Dkt. # 1.) Without more, Plaintiff's civil conspiracy claim under § 1985(3) must fail.

Plaintiff's civil conspiracy claim fares no better under Michigan law. "'A claim for civil conspiracy may not exist in the absence of an actionable tort." *Umani*, 432 F. App'x at 462 n.6 (quoting *Early Detection Ctr., P.C. v. N.Y. Life Ins. Co.*, 403 N.W.2d 830, 836 (Mich. Ct. App. 1986)). Plaintiff's Complaint does not properly state any claim; consequently, his civil conspiracy claim under Michigan law must also be dismissed. *See Early Detection Ctr., P.C.*, 403 N.W.2d at 836 ("[S]ince plaintiffs have failed to state any actionable tort theories in their proposed amended complaint, the conspiracy theory must also fail.").

## IV.  CONCLUSION

Accordingly, IT IS ORDERED that "Defendants' Rick Snyder and Ruthanne Okun's Motion to Dismiss" [Dkt. # 14], "Defendants Johnson and Whittler's Motion to Dismiss" [Dkt. # 18], and "Defendants' Motion to Dismiss" [Dkt. # 20] are GRANTED.

 s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 20, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 20, 2012, by electronic and/or ordinary mail.

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C1 ORDERS\12-12331.HARRIS.Grant.Mot.Dismiss.wpd